UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

APP GROUP (CANADA) INC. d/b/a
MACKAGE and A.P.P. GROUP INC.
d/b/a MACKAGE,

                             Plaintiffs,

                  -against-

RUDSAK USA INC.,

                         Defendant.

------------------------------------------------------------ X

:
:
:
:
:
:
:
:
:
:
:
:
:

21-CV-7712 (VEC)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/10/2022

VALERIE CAPRONI, United States District Judge:

     APP Group (Canada) Inc. and A.P.P. Group Inc. (collectively "Mackage"), Canadian and American corporate entities that own the fashion label Mackage, sued Rudsak USA Inc. ("Rudsak") for trade dress infringement, trade dress dilution, deceptive business practices, and common law unfair competition.  Plaintiffs allege that Rudsak produces and sells coats featuring knock-offs of Mackage's designs.  Rudsak moved to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons discussed below, the motion is GRANTED.

## BACKGROUND

     Mackage is a high-end fashion label that was founded in 1999; it is owned and operated by APP Group (Canada) Inc. and its wholly-owned American subsidiary, A.P.P. Group Inc. Compl., Dkt. 1 ¶¶ 1–2, 8.  On September 15, 2021, Mackage sued, alleging that Rudsak produced and sold coats that infringe upon its protectable trade dress: a V-shaped "fur-collar/hood" "and/or" an asymmetrical zipper.  *Id.* ¶¶ 14, 53.  Mackage alleges that it has used this trade dress in the American market since at least August 2007, *id.* ¶ 18–20, and that the trade

dress has been featured in storefronts, advertisements, popular magazines and websites, and by celebrities, fashion bloggers, and social media "influencers." *See id.* ¶¶ 23–32. Mackage claims that Rudsak, an apparel manufacturer and distributor, "engaged in a scheme to willfully and slavishly copy Mackage's Trade Dress." *Id.* ¶ 37.

Mackage brings claims against Rudsak for (1) trade dress infringement and trade dress dilution under 15 U.S.C. § 1125, (2) trade dress dilution under New York General Business Law § 360-l, (3) unlawful and deceptive acts and practices under New York General Business Law §§ 349 and 133, and (4) unfair competition under New York common law. Rudsak moved to dismiss the case for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss, Dkt. 12. Mackage opposed the motion. *See* Resp., Dkt. 23.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiffs. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required,

however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.   Mackage Has Failed to State a Claim for Trade Dress Infringement

Trade dress under 15 U.S.C. § 1125 is a "broad concept" that "encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the customer." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999, 1001 (2d Cir. 1997).  Two types of trade dress are entitled to protection: (1) product packaging, or the "dressing" of a product, and (2) product design, or the "configuration of the product itself." *Heller Inc. v. Design Within Reach, Inc.*, 2009 WL 2486054, at *5 (S.D.N.Y. Aug. 14, 2009); *see also Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir. 1997).  Mackage seeks protection for a "Trade Dress constituting a combination of distinctive features that identify the goods as originating from Mackage; including (i) the V-Shaped Collar; and/or (ii) the Asymmetrical Zipper."  Compl. ¶ 53.  Because these features concern key aspects of the product itself, Mackage's claim concerns a product design trade dress.

To state a claim for product design trade dress infringement, a plaintiff must provide "a precise expression of the character and scope of the claimed trade dress" and articulate the elements of design with specificity.  *Landscape Forms*, 113 F.3d at 381–82.  This specificity is achieved by "articulat[ing] the design elements that compose" the trade dress.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 1116 (2d Cir. 2001).  The Supreme Court explained that distinctiveness is the mainstay of a trade dress claim:

> Nothing in § 43(a) explicitly requires a producer to show that its trade dress is distinctive, but courts have universally imposed that requirement, since without distinctiveness the trade dress would not cause confusion . . . as to the origin,

sponsorship, or approval of [the] goods, as the section requires.  Distinctiveness is, moreover, an explicit prerequisite for registration of trade dress under § 2, and the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205,210 (2000) (internal quotation omitted).

A plaintiff also "must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the [parties'] goods."  *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003); *see also Yurman Design*, 262 F.3d at 115.  Courts must exercise "particular caution" in considering trade dress infringement claims related to product design because they "raise a potent risk that relief will impermissibly afford a level of protection that would hamper efforts to market competitive goods."  *Yurman*, 262 F.3d at 114 (citation omitted).

A.    The Complaint Contains Inadequate Allegations Describing the Product Design Trade Dress

Mackage fails to state a claim for product design trade dress infringement because it has alleged neither "the elements and features that distinguish its trade dress," *Yurman Design*, 262 F.3d at 117, nor "how they are distinctive," *Shevy Custom Wigs v. Aggie Wigs*, 2006 WL 3335008, at *5 (E.D.N.Y. Nov. 17, 2006).  It is not clear from the Complaint whether the purportedly protected trade dress is the V-shaped fur collar/hood, or the asymmetrical zipper, or the two in combination.  Compl. ¶¶ 14, 53.  The indefinite, high-level description in the Complaint[1] is a far cry from a description of a stable, unvarying list of distinct design features

---

[1]    The description is even less precise than this description suggests because elsewhere the Complaint acknowledges that the trade dress is not used on all of Plaintiffs' products, *see* Compl. ¶ 19, and some of the pictures used to illustrate the product trade dress show products with fur lined hoods that are not V-shaped, *see* left photographs on pp. 18–22, coats without any fur, *see* lower left photographs on pp. 18, 21, coats without zippers, *see* lower left photograph on p. 18, and coats with symmetrical zippers, *see* upper left photograph on pp. 18–22.

that is required to establish the character and scope of a product design trade dress.  *See Sara*

*Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017)

(dismissing a trade dress infringement claim that "merely contain[ed] a high level description of

features of several watches, such as 'gradient chain,' 'lobster claw closure,' and 'leaf-shaped

logo,' without allegations as to whether and how those features are distinctive").

Following Defendant's motion to dismiss, Mackage did not file an amended complaint

describing the distinctive elements and features of its claimed trade dress.  Instead, it attempted

to recharacterize its description of the trade dress in its brief in opposition to Defendant's motion.

In its brief, Mackage re-describes its trade dress as "either (i) coats with the signature V-Shaped

Collar alone or (ii) coats with the signature V-Shaped Collar and the Asymmetrical Zipper."

Resp., Dkt. 23 at 8.  Although the Court may only consider allegations contained in the

complaint, *see In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y.

2001) ("[A] complaint cannot, of course, be amended by the briefs in opposition to a motion to

dismiss."), even this more detailed description fails adequately to describe a product design trade

dress — Mackage continues to equivocate as to whether the collar and zipper are to be

considered together or separately for trade dress purposes.  *See* Resp., Dkt. 23 at 8.[2]

Furthermore, Mackage proffers nothing identifying the collar or zipper features as

distinct, either combined or in isolation, from similar collars and zippers on its competitors'

merchandise.  Design descriptions, no matter how detailed, are insufficient without specific

language detailing what makes the design distinct from other products.  *See Shevy Wigs*, 2006

WL 3335008, at *5 ("The phrase[s] 'specific lace band' or 'particular multi-directional part' fail

---

[2]     This description drops entirely the requirement from the Complaint that the collar be fur, and it also fails to
account for the many photographs it provided to illustrate its trade dress that do not have a V-shaped collar or an
asymmetrical zipper.  *See* note 1, *supra*.

to describe what features make the lace band or multi-directional part unique."); *see also Sara Designs*, 234 F. Supp. 3d at 555.  Further, Mackage's descriptions, like those in *Shevy Wigs* and *Sara Designs*, feature idiosyncratic adjectives but do not specifically and precisely claim what sets the design apart.[3]  Nowhere does Mackage claim to be the unique designer of its claimed trade dress.

While Mackage includes photographs of its coats that feature a V-shaped collar or asymmetrical zipper, "images alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress."  *NSI Int'l Inc. v. Horizon Grp. USA, Inc.*, 2021 WL 3038497 (S.D.N.Y. July 16, 2021); *see also Caraway Home, Inc. v. Pattern Brands, Inc.*, 2021 WL 1226156, at *8 (S.D.N.Y. Apr. 1, 2011) (holding that plaintiff's "description of its frying pan as having 'a deep bowl-shape with high sidewalls and the accompanying photographs" "shed no additional light on how [its] trade dress is distinct").  Courts cannot "be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional."  *Nat'l Lighting Co. v. Bridge Metal Indus.*, 601 F. Supp. 2d 556, 563 (S.D.N.Y. 2009).  The photographs of Mackage coats cannot cure Mackage's failure to include a precise description of the character and scope of it claimed trade dress because the Complaint makes no comparisons to competing coats with similar features and because many of the photographs do not include the purportedly unique features.[4]

---

[3]     Mackage attempts to analogize its claimed trade dress to the successfully pled trade dress claim in *GeigTech E. Bay LLC v. Lutron Elecs. Co., Inc.*, 352 F. Supp. 3d 265 (S.D.N.Y. 2018).  *See* Resp. at 7.  But the trade dress in *GeigTech* was successful because plaintiffs alleged that its roller shades were "distinctive because they expose the hardware and wires that are traditionally visible in other mounting hardware," *GeigTech*, 325 F. Supp. 3d at 278, while Mackage fails to explain how its claimed trade dress is distinct from traditional or other similar features on coats.

[4]     *See* note 1, *supra*.

B.     The Complaint Contains Inadequate Allegations of Secondary Meaning

Mackage also fails adequately to allege that its claimed trade dress has secondary

meaning.  Acquisition of secondary meaning is the process by which a product's appearance,

while not inherently distinctive at its inception, becomes distinctive as consumers grow to

associate it with the maker or sponsor of the product.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*,

505 U.S. 763, 769 (1992).  A product's appearance has acquired secondary meaning when "in

the minds of the public, the primary significance of the product feature is to identify the source

of the product rather than the product itself."  *Christian Louboutin S.A. v. Yves Saint Laurent Am.

Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012) (cleaned up).  Factors relevant to assessing

secondary meaning include: "(1) plaintiff's advertising expenditures; (2) consumer surveys

linking the trade dress to a particular source; (3) sales success; (4) unsolicited media coverage;

(5) attempts to plagiarize the trade dress; and (6) the length and exclusivity of the use."  *Sara

Designs*, 234 F. Supp. 3d at 555 (citation omitted).  The Complaint entirely fails to address the

first three factors.

Mackage does include screenshots and photographs of media coverage, but none of this

coverage specifically references either the V-shaped collar or the asymmetrical zipper — the

purported core elements of the claimed trade dress. *See* Compl. ¶ 14, 23.[5]  Media coverage may

corroborate secondary meaning, but to do so it must focus on the connection between the trade

dress and the brand.  *Cf. Steve Madden, Ltd. v. Yves Saint Laurent*, 2019 WL 2023766, at *7

(S.D.N.Y. May 8, 2019) (finding that an exhibit consisting of a fashion blog post analyzing

knock-offs of a claimed trade dress and celebrating the uniqueness and celebrity appeal of the

---

[5]       One screenshot, attributed to Huffington Post, refers to a "double collar," which the Plaintiff mentions
nowhere else in the Complaint.  *See* Compl., Dkt. 1 at 9.

trade dress was probative of secondary meaning).  Here, by contrast, the coverage discussed in the Complaint does not appear to focus on the trade dress in any significant way: some photographs of Mackage's coat appear to feature the V-shaped collar and asymmetrical zipper, some feature one or the other, and some feature neither. *See* Compl. ¶ 23.[6]  Mackage has not pled any facts to substantiate its conclusory claim that its trade dress "identif[ies] the goods as originating from Mackage." *Id.* ¶ 14.  Accordingly, the Complaint fails adequately to plead secondary meaning.

  C.  The Complaint Contains Inadequate Allegations of Non-Functionality

  Mackage has also failed to allege facts from which the Court can plausibly infer that its claimed trade dress is non-functional.  "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 164 (1995).

  A trade dress can possess utilitarian or aesthetic functionality. *See Christian Louboutin*, 696 F.3d at 217.  A product feature has utilitarian functionality if "it is (1) 'essential to the use or purpose of the article,' or it if (2) 'affects the cost or quality of the article.'" *Id.* (quoting *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 850 n.10 (1982)).  A design has aesthetic functionality if "the aesthetic design of a product is *itself* the mark for which protection is sought" and is non-protectable "if giving the markholder the right to use it exclusively 'would

---

[6]  Plaintiff attempts to argue in its response that secondary meaning is a question of fact and that its consideration is not suited to a motion to dismiss. *See* Resp. at 15.  While the ultimate decision whether the trade dress has secondary meaning is obviously a question of fact, it, like all other elements of a trade dress claim, has to be adequately alleged to survive a motion to dismiss. *See, e.g.*, *Steve Madden*, 2019 WL 2023766, at *5; *Sara Designs*, 234 F. Supp. 3d at 557; *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, 2017 WL 4997838, at *8 (S.D.N.Y. Oct. 20, 2017); *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 2013 WL 866867, at *3 (S.D.N.Y. Mar. 8, 2013).

put competitors at a significant non-reputation-related disadvantage.'"  *Id.* at 219–220 (citing *Qualitex Co.*, 514 U.S. at 165).

Mackage has made only conclusory allegations about the lack of functionality of its claimed trade dress.  Asserting in an entirely conclusory way that unspecified aspects of its product trade dress are "non-functional," Compl. ¶ 14, 17, 53, and describing the product trade dress as "non-functional as it does not have any utility," *see id. at* ¶ 66, do not satisfy the pleading standard of *Iqbal*.  556 U.S. at 678.  In short, Mackage has entirely failed to plead facts from which the Court could plausibly infer that its purported trade dress is non-functional.[7]

Because Mackage has failed adequately to describe its claimed trade dress and has failed adequately to allege its secondary meaning and non-functionality, it has failed to state a claim for trade dress infringement.

## II.     Mackage Has Failed to Plead Trade Dress Dilution

To allege a trade dress dilution claim under federal or New York State[8] law, Plaintiff must allege at least (1) that the trade dress is truly distinctive or has acquired secondary meaning; and (2) a likelihood of dilution as a result of blurring or tarnishment.  *See* 15 U.S.C. § 1125(c)(1)–(2); *Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 2000 WL 1721126, at *7 (2d Cir. 2000).  To allege a federal trade dress claim, Plaintiff must also allege that the trade dress is

---

[7]     The additional facts articulated in Plaintiffs' brief, *see* Resp. at 11–15, might have been sufficient to plead non-functionality if they were in the Complaint, which they are not.  Even if Plaintiff had adequately alleged lack of functionality, however, the Complaint would still be subject to dismissal for failure adequately to allege the character and scope of the claimed trade dress and secondary meaning.

[8]     To allege a claim for trade dress dilution under New York General Business Law § 360-l, a plaintiff must allege "(1) that the trademark is truly distinctive or has acquired secondary meaning; (2) a likelihood of dilution either as a result of blurring or tarnishing; and (3) predatory intent."  *Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 2000 WL 1721126, at *7 (2d Cir. 2000) (citing *Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39, 42 (2d Cir. 1994)) (other citation omitted).  *But see Deere & Co.*, 41 F.3d at 45–46 (noting that New York courts have not clearly indicated whether "a showing of predatory intent is required for, or merely relevant to, a finding that the anti-dilution statute has been violated.").

"widely recognized by the general consuming public of the United States."  *See* 15 U.S.C. §
1125(c)(1)–(2).

Whether a trade dress is sufficiently "famous" to sustain a dilution claim depends on (1)
the "duration, extent, and geographic reach of advertising and publicity of the mark," (2) the
"amount, volume, and geographic extent of sales of goods and services offered under the mark,"
(3) the "extent of actual recognition of the mark," and (4) whether "the mark was registered."  *Id.*
at § 1125(c)(2)(A).  "Based on these criteria, courts generally have limited famous marks to
those that receive multi-million dollar advertising budgets, generate hundreds of millions of
dollars in sales annually, and are almost universally recognized by the general public."  *Heller*,
2009 WL 24860543, at *3; *see also Savin Corp. v. Savin Grp.*, 391 F.3d 439, 449 (2d Cir. 2004)
(holding that "the element of fame is the key ingredient"); *Helios Int'l S.A.R.L. v. Cantamessa
USA, Inc.*, 2013 WL 3943267, at *10 (S.D.N.Y. July 31, 2013) (finding that a "narrow niche of
the American public that comprises the consumer market for 'luxury jewelry'" does not
constitute a population sufficiently large for a mark to be famous for §1125(c)(2) purposes).

Even if Plaintiffs had adequately described the elements of their trade dress and
adequately alleged secondary meaning, they have not come close to alleging that its mark is
widely recognized.  Mackage has not included any details of its advertising budgets or sales nor
claimed a sufficiently broad demographic that recognizes either its products generally or its trade
dress specifically.  The Complaint alleges in a conclusory way that Mackage's trade dress is
"also" famous among "consumers of high-end fashion products" without naming any other group
for which this holds true.  Compl. ¶ 34.  Mackage claims that the "V-Shaped Collar is well-
recognized all over the world," *id.* ¶ 29, but all it offers in support are excerpts from international
fashion magazines that state that: the "fur collar . . . has become a hallmark of the brand," is

"very successful," and "creates a must among international celebrities," *id.* ¶ 30 (internal

quotations omitted); Mackage's coats (and nothing more specific) "are surprisingly chic," *id.* ¶

31, and have "stylish details like an asymmetrical zipper [and] fur-trimmed hood," *id.* ¶ 32

(alteration in original).  None of those descriptions comes close to establishing the sort of fame

required for §1125(c) purposes; at best, Mackage has adequately alleged recognition among the

narrow and rarefied class of international celebrities.[9]

Secondary meaning for the purposes of a New York General Business Law § 360-l

claim is the same as under federal trade dress law.  *See Paco*, 2000 WL 1721126, at *3 ("Marks

acquire secondary meaning when 'the name and the business have become synonymous in the

mind of the public, submerging the primary meaning of the term in favor of its meaning as a

word identifying that business." (internal quotation omitted))  As discussed *supra*, Mackage has

not adequately pled a trademark or a trade dress, much less one that is "truly distinctive" or has

secondary meaning.

In short, Mackage's trade dress dilution claim fails under both federal and New York

state law.

### III.    Mackage Failed Adequately to Plead Its Remaining Claims.

Mackage's remaining claims fail because it has not adequately alleged that it has a

protectable trademark or trade dress, an element necessary for all of the remaining claims.  Even

if it had adequately alleged a protectable trademark or a trade dress, however, its claims that

---

[9]       In its response, Mackage attempts to compare itself to Gucci and Chanel, "luxury brands that are primarily associated with high-end consumers, but which are *also* 'famous' among the general public."  Resp. at 21 (emphasis in original) (citing *Gucci Am., Inc. v. Gucci*, 2009 WL 8531026 (S.D.N.Y. Aug. 5, 2009); *Chanel, Inc. v. Gardner*, 2011 WL 204911 (S.D.N.Y. Jan. 21, 2011)).  But the cases to which it cites are specific to the fame of the Gucci and Chanel *trademarks*, which are registered, highly-financed, specific designs that enjoy broad, distinct, and long-standing popularity.  By contrast, nothing in Mackage's pleadings suggests that Mackage's trade dress enjoys similar fame.

Rudsak engaged in unfair competition[10] or violated § 133[11] or § 349(a)[12] of the New York General Business Law would still fall flat.

Mackage fails to state a claim of unfair competition because it fails adequately to allege that it has a protected mark.  Its claim that Rudsak violated N.Y. Gen. Bus. Law § 349(a) cannot succeed because Mackage has not alleged adequately that Rudsak injured the public interest in allegedly copying Mackage's coat designs.  *See Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 435 (S.D.N.Y. 2012) (holding that trademark claims are not cognizable under section 349 without "specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution" (cleaned up)).  Finally, Mackage has not stated a claim that Rudsak violated section 133 of the New York General Business Law because it alleges nothing from which the Court could infer that Rudsak engaged in bad faith to deceive the public. *Heritage of Pride, Inc. v. Matinee NYC, Inc.*, 2014 WL 12783866, at *16 (S.D.N.Y. Jun. 20, 2014) (to prevail on a § 133 claim, the plaintiff must show that the defendant used the plaintiff's mark in bad faith to deceive the public) (citation omitted).

## CONCLUSION

Because Mackage fails to allege sufficient facts to allow the Court plausibly to conclude that it has a protectible trade dress, the motion to dismiss is GRANTED as to all counts and the

---

[10]    To plead unfair competition in New York, a plaintiff must allege sufficient facts for the Court plausibly to infer that (1) its mark is entitled to protection, (2) the defendant's use of its mark is likely to cause consumer confusion, and (3) the defendant acted in bad faith.  *See Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56–57 (S.D.N.Y. 2015).

[11]    N.Y. Gen. Bus. Law § 133 prohibits any "person, firm or corporation" from using "any name, designation or style, or any symbol or simulation thereof, or a party of any name, designation or style, or any symbol or simulation thereof, which may deceive or mislead the public as to the identity of such person, firm or corporation or as to the connection of such person, firm or corporation with any other person, firm or corporation."

[12]    Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).

case is DISMISSED with prejudice.[13]  The Clerk of Court is respectfully directed to terminate

any open motions and close the case.


**SO ORDERED.**

Date:  **August 10, 2022**
      **New York, NY**
                                       **VALERIE CAPRONI**
                                  **United States District Judge**

---

[13]      "It is well established that leave to amend need not be granted . . . where the proposed amendment would be futile." *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (cleaned up).  The Court finds that amendment here would be futile because all of Mackage's claims are predicated on a protectable trade dress; in neither its complaint nor its brief in opposition to the motion to dismiss has Mackage been able to describe a legally protectible trade dress.  There is no reason to believe that a third try would be the charm.