```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
 APP GROUP (CANADA) INC. d/b/a                                :
 MACKAGE and A.P.P. GROUP INC.                                :
 d/b/a MACKAGE,                                               :    21-CV-7712 (VEC)
                                                              :
                            Plaintiffs,                       :    OPINION & ORDER
                                                              :
                    -against-                                 :
                                                              :
 RUDSAK USA INC.,                                             :
                                                              :
                            Defendant.                        :
------------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Plaintiffs APP Group (Canada) Inc. and A.P.P. Group Inc. (collectively, "Mackage"), a high-end fashion company, brought various claims against Defendant Rudsak USA Inc., alleging that Rudsak copied its designs for coats. Rudsak moved to dismiss Mackage's claims for unfair competition pursuant to New York common law to the extent they concern designs that do not bear Mackage's alleged trade dress. Rudsak's motion is GRANTED.

## BACKGROUND

### I.   Factual Background

Mackage is a luxury fashion brand owned and operated by APP Group (Canada) Inc. and its wholly-owned subsidiary, A.P.P. Group Inc. Am. Compl., Dkt. 37, ¶¶ 1–2, 8. Mackage alleges that Rudsak, a competitor, produced and sold coats that infringe upon its protectable trade dress. *Id.* ¶¶ 15, 37, 40. It further alleges that Rudsak has attempted to copy a variety of Mackage's coat styles, some of which bore Mackage's trade dress and others of which did not. *Id.* ¶ 45.

In its efforts to replicate Mackage's coats, Rudsak allegedly hired former Mackage employees in contravention of confidentiality agreements those employees signed with Mackage.

*Id.* ¶¶ 43, 45–46.  Mackage alleges that those employees "are intimately affiliated with the unique aspects of Mackage's designs, fits, models, sketches and other production details," which Mackage regards as proprietary.  *Id.* ¶ 45.  Mackage further alleges that Rudsak "routinely" purchased Mackage coats and instructed their employees to copy them "nearly verbatim."  *Id.* ¶ 47.  According to Mackage, Rudsak employed these practices both with respect to coats that bore Mackage's trade dress and coats that did not.  *Id.*

## II.     Procedural Background

This case began in 2021 when Mackage sued Rudsak for trade dress infringement and trade dress dilution pursuant to the Lanham Act, Compl., Dkt. 1, ¶¶ 52–71, unfair competition pursuant to New York common law, *id.* ¶¶ 72–82, and trademark dilution and unlawful and deceptive practices pursuant to the New York General Business Law.  *Id.* ¶¶ 83–105.  The Court granted Rudsak's motion to dismiss, finding that "Mackage fail[ed] to allege sufficient facts to allow the Court to plausibly conclude that it has a protectable trade dress" — a necessary predicate for all of Mackage's claims.  Opinion & Order Granting Motion to Dismiss, Dkt. 25, at 12.  The Court further concluded that amendment would be futile because "in neither its complaint nor its brief in opposition to the motion to dismiss has Mackage been able to describe a legally protectible trade dress."  *Id.* at 13 n.13.

On appeal, the Second Circuit affirmed this Court's conclusion that Mackage failed to articulate a protectable trade dress.  *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 22-1965, 2024 WL 89120, at *1–*4 (2d Cir. Jan. 9, 2024).  It remanded on the issue of unfair competition, however, finding that this Court "failed to address the unfair competition claim to the extent that it was predicated on misappropriation of proprietary interests other than the trade dress." *Id.* at *4.  It also reversed this Court's decision denying Mackage leave to amend its Complaint, noting that it could "clarify its description of the trade dress and how the trade dress is distinctive;

specify its allegations of non-functionality; add to the elements of secondary meaning; and clarify the basis for the state-law claim for unfair competition" upon amendment. *Id.* at *5.

Consistent with the Second Circuit's directive, the Court granted Mackage leave to amend its Complaint, *see* January 30, 2024, Order, Dkt. 32, which it did in March 2024. *See* Am. Compl. The Amended Complaint renews only two of the claims from the original Complaint: trade dress infringement pursuant to the Lanham Act, *id.* ¶¶ 53–64, and unfair competition pursuant to New York common law with respect to coats with and without the alleged trade dress, *id.* ¶¶ 65–86. Rudsak moved to dismiss the unfair competition claim only to the extent that it pertains to coats without Mackage's trade dress. *See* Rudsak Mem., Dkt. 42, at 6–10.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiffs. See *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

"New York recognizes 'two theories of common-law unfair competition: palming off and misappropriation.'" *Red Apple Media, Inc. v. Batchelor*, 729 F. Supp. 3d 350, 369–70 (S.D.N.Y. 2024) (quoting *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007)). Mackage proceeds on a theory of misappropriation. To state a claim for misappropriation, Mackage must allege that Rudsak "(1) misappropriated [Mackage's] labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Sidney Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193, 209 (S.D.N.Y. 2014) (cleaned up). The thing misappropriated must be "a commercial advantage which belong[s] exclusively" to Mackage. *Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69, 70 (2d Cir. 2015). Mackage "must also sufficiently identify the innovations or developments allegedly misappropriated to allow the reader to understand what specifically was misappropriated and to evaluate [Mackage's] property rights in it." *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 629–30 (S.D.N.Y. 2014) (internal quotation marks omitted).

Mackage's Amended Complaint fails to allege that Rudsak misappropriated a commercial advantage belonging to it. The Amended Complaint defines Mackage's "Proprietary Information" as its "designs, patterns, styles, fits, templates, models, manufacturers, and other aspects of its products and production chain," but does not articulate *which* item of that litany was allegedly misappropriated. Am. Compl. ¶ 42. This is fatal to Mackage's claim for at least two reasons.

First, because Mackage fails to specify the commercial advantage that is at issue other than the broad list of categories set forth in the Amended Complaint, its contention that the allegedly misappropriated information is proprietary is entirely conclusory. At least some of the aspects of its business that it characterizes as proprietary, such as designs, patterns, and styles,

4

are discernible from the face of its products. *See, e.g.*, *id.* ¶ 51 (depicting various Mackage "styles" in photographs). Although Mackage alleges that it "goes to great lengths" to protect its purportedly proprietary information, the sole example it cites of those efforts is its "requir[ement] that its employees sign agreements with confidentiality provisions and restrictive covenants" to prevent them from working with competitors. *Id.* ¶ 77. This allegation raises more questions than it answers, as the Amended Complaint is silent as to what information those agreements protect. Accordingly, it is impossible to discern how the purportedly proprietary information constitutes a commercial advantage belonging exclusively to Mackage.

Second, and more fundamentally, because the Amended Complaint does not specify the commercial advantages at issue, the nature of the alleged misappropriation is inscrutable. *See Ferring B.V.*, 4 F. Supp. 3d at 630 (plaintiffs failed to state a claim where it offered only "vague statements" describing the information at issue, and hence "fail[ed] to articulate specific acts of misappropriation"). The crux of Mackage's claim is that Rudsak purposefully hires former Mackage employees who are familiar with its proprietary information "and then utilizes them to copy Mackage's styles." Am. Compl. ¶ 80. But because it is unclear what information is the exclusive province of Mackage, it is also unclear how a former employee would be uniquely equipped to exploit their knowledge of Mackage's inner workings to Rudsak's benefit and Mackage's detriment. Indeed, while the Amended Complaint includes photographic samples of coats it claims Rudsak copied from Mackage, *id.* ¶ 51, it does not allege that former Mackage employees designed those coats. Nor does it allege any other facts that would permit the Court reasonably to infer that Rudsak relied on confidential information in designing or manufacturing its coats.[1] In short, the nexus between the offending behavior and the offending products is

---

[1] In its memorandum in opposition to the motion to dismiss, Mackage argues that its alleged "Proprietary Information" includes "identities of Mackage's manufacturers as well as Mackage's production chain" and points

5

ambiguous. *See Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 166 F. Supp. 2d 891, 895 (S.D.N.Y. 2001) (notwithstanding "similarities" between plaintiff and defendant's products, plaintiff failed to state a claim for unfair competition because it "has not specifically alleged that [the defendant] actually incorporated any exclusive property" belonging to the plaintiff into its products).

The remaining allegations about Rudsak's penchant for copying Mackage are irrelevant. Mackage alleges, for example, that Rudsak skirts former Mackage employees' confidentiality agreements and restrictive covenants by retaining them as "consultants" rather than employees. Am. Compl. ¶ 81. Assuming that is true, all this allegation suggests is that Rudsak and Mackage, like competitors in most industries, hire from the same pool of talent; it does not suggest that Rudsak recruited these employees in order to tap into some unspecified well of confidential knowledge. Likewise, the factual allegation that Rudsak "purchases Mackage coats that do not bear any elements of the Trade Dress and instructs its employees to measure and copy them nearly verbatim" leads the Court to infer a fact that is not helpful to Mackage — Rudsak copies Mackage's designs by buying its publicly available products, not by leveraging private information. *Id.* ¶ 82. At best, these allegations support an inference that Rudsak engaged in bad faith by "intentionally cop[ying]" Mackage's designs. *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013). That inference, however, is immaterial because Mackage has not adequately alleged facts from which the Court could plausibly infer the required threshold allegation that Rudsak misappropriated something that belongs solely to Mackage. *See*

---

out that information is not "displayed for all the world to see." Mackage Mem., Dkt. 43, at 17. The Court agrees, but nowhere in the Amended Complaint is there any fact alleged that even remotely suggests that Rudsak made use of knowledge of Mackage's manufacturers or production chain in producing its coats. Similarly, Mackage argues that there is a "significant commercial advantage garnered by a competitor securing information regarding all aspects of a garment's production chain . . . *before* those garments are released for purchase in the consumer market." *Id*. The Court again agrees, but it also again notes that there are no facts alleged that suggests Defendant had such early information.

*Czech Beer Importers, Inc. v. C. Haven Imports, LLC*, No. 04 CIV. 2270, 2005 WL 1490097, at *7 (S.D.N.Y. June 23, 2005) ("Plaintiff fails to allege that Defendant misappropriated [its] information. . . . A common-law claim for unfair competition is flexible, but it cannot be sustained simply by alleging that defendant's actions were 'unfair.'").

In sum, Mackage has failed to state a claim upon which relief can be granted. Having been directed by the Second Circuit to "clarify the basis for the state-law claim for unfair competition" on amendment, and having failed to do so, the Court finds it unlikely that yet another attempt to amend would cure the deficiencies in Mackage's Amended Complaint. *APP Grp.*, 2024 WL 89120, at *5. Moreover, although Plaintiff requests in its opposition to the motion to dismiss leave to file an Amended Complaint, it has not suggested that it possesses facts that would cure the deficiencies that Defendant's motion has highlighted and that the Court has highlighted in this opinion. *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 180 (S.D.N.Y. 2022). Accordingly, leave to amend is DENIED.

## CONCLUSION

For the foregoing reasons, Rudsak's motion to dismiss is GRANTED. Mackage's claim alleging that Rudsak engaged in unfair competition in violation of New York common law with respect to the coats without Mackage's alleged trade dress, Am. Compl. ¶¶ 76–86, is DISMISSED WITH PREJUDICE. The Clerk of the Court is respectfully directed to close the open motion at Dkt. 41.

The deadline for Rudsak to respond to the remaining claims in the Amended Complaint is **Monday, April 14, 2025**. Consistent with the Court's May 3, 2024, Civil Case Management Plan and Scheduling Order, Dkt. 40, all fact discovery must be completed not later than **Tuesday, August 12, 2025**. The next pretrial conference is scheduled for **Friday, August 15, 2025, at 10:00 A.M.** in Courtroom 20C of the Daniel Patrick Moynihan Courthouse, 500 Pearl

7

Street, New York, New York, 10007.  Not later than **Thursday, August 7, 2025**, the parties must submit a joint letter containing all the information outlined in Paragraph 10 of the Civil Case Management Plan and Scheduling Order.

    If the parties wish to be referred to their assigned Magistrate Judge for a settlement conference, they may file a joint letter with the Court requesting a referral.

**SO ORDERED.**

Date:  March 13, 2025
       New York, NY

                                      **VALERIE CAPRONI**
                                    **United States District Judge**